***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between Plaintiff and Defendant-Employer at all relevant times.
3. Sedgwick CMS is the carrier on the risk.
4. This is a denied claim but the parties submitted a Form 22 in which they agreed that Plaintiff's average weekly wage was $412.36, which yields a compensation rate of $274.92. In addition, the parties stipulated into evidence the following: (a) a pretrial agreement; (b) medical reports; (c) medical records; and (d) a job description.
 ***********
Based on the foregoing stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was forty-nine years of age on the date of hearing before the deputy commissioner. She has a high school diploma and an associate's degree in executive secretarial science. Plaintiff worked as a loan processor for First Southern Savings Bank for four years. She worked as a scale operator at the Henderson County Solid Waste Department from 1993 until 1998.
2. Defendant-Employer hired Plaintiff as a library assistant in January 1999. She worked five days a week, seven and a half hours per day. Plaintiff rotated between working the circulation desk and performing other tasks either on the library floor or in the back rooms. Plaintiff generally worked in the following manner: (a) twenty-five percent of her time in the stacks reshelving books as they were returned to the library; (b) sixty percent in circulation checking borrowed materials into and out of the library; and (c) fifteen percent of her work day sorting mail, replacing newspapers and magazines. Plaintiff did not experience upper extremity symptoms prior to employment in her position as a library assistant.
3. Defendant-Employer ranks second among the public libraries in the state in terms of circulation. The work pace at the library is not always consistent; sometimes it is busy while other times there is very little activity. During Plaintiff's employment as a library assistant, the library underwent a staff reduction that resulted in a greater volume of work to be performed by fewer employees and caused an increase in Plaintiff's workload. Plaintiff's supervisor at that time did not rotate employees to various duties during a shift and often employees worked the circulation desk for hours at a time or the entire shift. However, Brenda Hine later became the supervisor and instituted a program of rotating employee duties.
4. Plaintiff developed pain radiating from her right shoulder to hand in December 1999. She sought treatment from Dr. Hobart Rogers, an orthopaedic surgeon, on January 4, 2000. Dr. Rogers diagnosed right-sided carpal tunnel syndrome and recommended conservative treatment, including medication and a night splint.
5. Plaintiff continued to work with a wrist brace, however to maintain her job productivity, she switched many of her duties from her right hand to her left hand.
6. Dr. Rogers, after achieving little relief for Plaintiff's pain, referred her to Dr. Charles Shields for nerve conduction studies. Nerve conduction studies and MRIs of her right elbow and cervical spine were performed and interpreted as negative. Dr. Shields determined that Plaintiff's pain was not related to the nerves in her right upper extremity and thereby ruled out carpal tunnel syndrome. The nerve conduction studies did not test for radial tunnel syndrome of the forearm. Dr. Rogers continued conservative treatment, including injection therapy.
7. Plaintiff's work activities continued to exacerbate the pain in her right arm and elbow. She also began to suffer left elbow symptoms similar to her right arm.
8. After Dr. Shields discontinued his medical practice, Plaintiff consulted Dr. Angelo Cammarata, an orthopaedic surgeon specializing in orthopaedic treatment and surgery of the upper extremities. Dr. Cammarata first examined Plaintiff in November 2001 and diagnosed lateral epicondylitis in the right arm. Epicondylitis, also called "tennis elbow," is an inflammation of the muscles and ligaments primarily in the elbow that is caused by traumatic injury, excessive weight bearing, repetitious movement of the upper extremities, or a combination of these factors. In the case of epicondylitis caused by repetitive movement, control of the condition is difficult due to the fact that normal everyday activities result in an injury that never gets the chance to rest and heal.
9. Dr. Cammarata opined that it was "hard to determine" if Plaintiff's condition was caused by her employment but that Plaintiff's employment "clearly" exacerbated her condition.
10. Plaintiff was placed on light duty with restrictions and prohibited from working at the circulation desk or in the stacks beginning in December 2001. Plaintiff's condition improved to some degree with reduced activity. On January 28, 2002, Dr. Cammarata, following a comprehensive functional capacity examination, certified that Plaintiff could return to work as an assistant librarian with some restrictions.
11. Plaintiff sought treatment from Dr. Lorraine Doyle in February 2002. Plaintiff testified that she consulted with Dr. Doyle because she was still experiencing pain and did not regain the ability to perform her job fully. Dr. Doyle diagnosed Plaintiff as suffering from lateral and medial epicondylitis. Dr. Doyle prescribed splints and physical therapy. She noted in her medical records that Plaintiff should not perform repetitive work as a librarian.
12. Plaintiff continued light duty work until February 2002. Ms. Hine and Mary Alice Jackson, Defendant-Employer's personnel secretary in charge of workers' compensation, testified that as of February 8, 2002, Defendant-Employer could no longer employ Plaintiff in a light duty capacity as prescribed by Dr. Doyle because there was no job of that description within Defendant-Employer's employment possibilities. Defendant-Employer offered Plaintiff disability retirement.
13. Following physical therapy, Plaintiff's condition improved by April 2002. Dr. Doyle, however, was of the opinion that Plaintiff should not perform repetitive work and recommended that Plaintiff develop necessary skills to qualify for employments which would not involve repetitive motion. Therefore, Plaintiff enrolled as a student at the University of North Carolina at Asheville to change her career to accounting. Plaintiff testified that the school activity exacerbated her pain, resulting in an inability to concentrate on her course of study.
14. By September 2002, Plaintiff continued to experience symptoms, including stiffness in her neck. Dr. Doyle ordered x-rays and additional physical therapy. By November 2002, Plaintiff's neck stiffness had improved increasing her range of motion. Dr. Doyle recommended continued physical therapy. On November 7, 2002, Dr. Doyle recommended that Plaintiff cease her education efforts because of her increased symptoms. By December, Plaintiff's pain was decreased, although not totally alleviated.
15. Treatment continued through August 2003 with Plaintiff's condition remaining relatively unchanged. Dr. Doyle prescribed Celebrex and Darvocet. Although she did not assign a date, as of her deposition on September 25, 2003, Dr. Doyle believed that Plaintiff was at maximum medical improvement. Surgery is not recommended and Dr. Doyle was of the opinion that further injection therapy would provide only temporary relief. Dr. Doyle opined that Plaintiff could not return to employment that requires repetitive motion that would aggravate Plaintiff's chronic pain symptoms.
16. Dr. Doyle, having viewed a videotape of Plaintiff's job duties at Defendant-Employer, was also of the opinion that Plaintiff's employment contributed to Plaintiff's bilateral epicondylitis. Dr. Doyle opined that the job duties performed by Plaintiff as demonstrated on the videotape of her job duties would increase Plaintiff's symptoms.
17. Both Drs. Cammarata and Doyle share the opinion that Plaintiff's employment at Defendant-Employer, at the least, significantly aggravated her epicondylitis if it did not cause the condition.
18. Defendant-Employer contends that Plaintiff could perform her duties as a library assistant based upon Dr. Cammarata's thorough evaluation of Plaintiff's functional capacity, including a contemporaneous review of a job description provided by Defendant-Employer. Dr. Cammarata opined on January 28, 2002 that Plaintiff could perform the duties of an assistant librarian with the following restrictions: (a) avoid any cyclical flexion and extension activities with the elbow; (b) work with weights but ones that were light enough for Plaintiff to tolerate; and (c) work as an assistant librarian with the stipulation that she would have periods of rest between lifting or shelving activities.
19. Dr. Cammarata admitted on cross examination that Plaintiff's job functions required cyclical activities, but not highly continuous; and that epicondylitis can reach a state where simple activities of daily living can produce profound pain.
20. Dr. Doyle certified that Plaintiff could not work as an assistant librarian on February 18, 2002, approximately one month following Dr. Cammarata's certification that Plaintiff could perform most duties of an assistant librarian with certain restrictions. Dr. Doyle's certification was made, at the time, without benefit of a job description other than Plaintiff's description of her job duties, and without the benefit of reviewing Dr. Cammarata's findings. She subsequently reviewed a videotape of Plaintiff's work duties as an assistant librarian for Defendant-Employer and reaffirmed her opinion that such duties would increase Plaintiff's pain and discomfort. In addition, Dr. Doyle testified that Plaintiff was at an increased risk of developing epicondylitis as compared to the general public not so employed.
21. Plaintiff testified that she cannot keyboard, drive a car for longer than thirty minutes, lift objects such as cartons of milk or perform repetitive arm movement without increasing her pain. Plaintiff's testimony is consistent with Dr. Doyle's testimony that Plaintiff's condition has reached a chronic state.
22. Both Drs. Cammarata and Doyle's opinions are accepted as credible. The opinions of both physicians as to the degree of work that Plaintiff can perform represent differences in professional judgment. Dr. Doyle's opinion that Plaintiff's condition has become chronic and prevents her from performing as an assistant librarian is more compelling. Defendant-Employer's contention that Plaintiff could have returned to her employment as an assistant librarian is not persuasive as the functional capacity evaluation report prepared during Dr. Cammarata's period of treatment, while noting that Plaintiff's effort was "sub-maximal," recommended that Plaintiff should avoid cyclical flexion and extension of the elbow or cyclical pronation, supination, extension and flexion of the wrist that generate loads to the elbow and forearm as well as work involving the forearms.
23. The greater weight of the evidence establishes that Plaintiff would experience periods of improvement when her work activities for Defendant-Employer ceased, consistent with her condition, even though her symptoms did not entirely abate and her condition has become chronic. In addition, Dr. Doyle's analysis that epicondylitis can be become chronic and persistent despite removal from work is supported by Dr. Cammarata's testimony and is consistent with Plaintiff's testimony of her condition.
24. Plaintiff has attempted to find employment consistent with her restricted capabilities. As of the date of hearing Plaintiff has been unsuccessful in finding employment, having applied for in excess of thirty positions she thought might be within her capabilities. Defendant-Employer has not provided vocational rehabilitation. A Vocational Evaluation Report prepared by the North Carolina Department of Health and Human Services, Division of Vocational Rehabilitation Services, dated February 26, 2003, concluded it would be difficult for Plaintiff to find jobs which do not require repetitious motion or lifting.
25. Plaintiff continues to be treated by Dr. Doyle; however, Plaintiff has not regained full capability of using her upper extremities, has not reached maximum medical improvement, is limited to a five pound lifting restriction; is required to wear wrist braces on each arm; cannot engage in repetitious movement of her elbows without increasing her level of pain; is restricted to light duty activity; and consequently has not been employed in any capacity since February 9, 2002.
26. Defendant-Employer defended this action based in large measure on the opinions of Dr. Cammarata. Dr. Cammarata's testimony provides a reasonable basis for the issues raised by Defendant-Employer.
27. Based on the evidence, Dr. Doyle should continue as Plaintiff's treating physician.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff has proven that she contracted epicondylitis, an occupational disease, which was due to causes and conditions characteristic of and peculiar to her employment with defendant-employer and which excluded all ordinary diseases of life to which the general public is equally exposed. N.C. Gen. Stat. § 97-53(13); Booker v. DukeMedical Center, 297 N.C. 458 (1979).
2. Plaintiff has been temporarily totally disabled as the result of her occupational disease since February 9, 2002 and is entitled to temporary total disability compensation from February 9, 2002 and continuing until further order of the Industrial Commission in the amount of $274.92 per week.
3. Defendants are obligated to pay Plaintiff's medical expenses resulting from her compensable occupational disease for so long as such treatment may be reasonably required to effect a cure, provide relief, or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
4. Dr. Doyle should be designated as Plaintiff's authorized treating physician.
5. Defendant-Employer's defense of this workers' compensation action was not unfounded, litigious or stubborn. N.C. Gen. Stat. § 97-90.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay Plaintiff weekly temporary total disability in the amount of $274.92 beginning February 2, 2002 and continuing until further orders of the Industrial Commission. All accrued compensation shall be paid in one lump sum. Payment of temporary total disability benefits is subject to the payment of Plaintiff's reasonable attorney fees provided for hereinafter.
2. Dr. Doyle is designated Plaintiff's treating physician.
3. Defendants shall pay for all medical care and treatment incurred or to be incurred in the future resulting from Plaintiff's occupational disease when the bills for such services have been filed and approved in accordance with law and Industrial Commission procedures.
4. Defendants shall pay a reasonable attorney fee in the amount of 25% of the compensation approved and awarded Plaintiff in paragraph one. The attorney fee shall be deducted from the compensation due Plaintiff and paid directly to Plaintiff's attorney. Thereafter, every fourth check shall be sent directly to Plaintiff's counsel.
5. Defendant shall pay the costs.
This the ___ day of December 2004.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER